IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Case No: 3:15-cv-354

| | |
|---|---|
| LM RESTAURANTS, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ALE YEAH!, INC., ALE YEAH! ROSWELL, )<br>INC., FILL 'ER UP, LLC, FRANCISCO )<br>VILA AND EDDIE HOLLEY, )<br>)<br>Defendants. ) | RESPONSE OPPOSING MOTION<br>TO DISMISS |

Defendants market and license infringing goods and services in this jurisdiction. Incredibly, Defendants now claim they have no contacts with this judicial district. Defendants' motion to dismiss for lack of personal jurisdiction and venue should be denied.

## FACTS

Unauthorized imitation of a brand is not the highest form of flattery. It is trademark infringement. After LMR adopted the witty mark ALE YEAH! to advertise its ale house restaurant and bar services, Defendants also began offering services selling beer under the mark ALE YEAH!. Defendants[1] own and operate a chain of beer stores in Georgia. Defendants' beer stores focus on craft beer, which Defendants sell in bottles, cans, and growlers for off-site consumption, as well as "flights," a series of beers in 2 – 6 oz serving sizes to be drunk on the premises. [Haas Decl., D.21, Ex. A[2] (flight definition); Ex. B (Defendants' website); D.18, p.3.] Defendants also sell food items and other merchandise.

Defendants' own words make clear that Defendants use ALE YEAH! in "advertisements

---
[1] The motion to dismiss treats all five defendants as a single entity, "Ale Yeah." [D.18, p. 3.]
[2] All references to Exhibits refer to the Exhibits to the Haas Declaration, D.21.

and articles in nationally distributed trade magazines,…at trade shows within the U.S., and [in] advertising their services online and soliciting orders thereby." [Ex. D, ¶3.]  In opposing a trademark application submitted by North Carolinians Mr. and Mrs. VanNess[3] to register ALE YEAH for beer mugs and glassware and for apparel such as t-shirts, Defendants asserted that they engaged in this substantial use of ALE YEAH! across the country.  [*Id*., ¶¶ 3, 12.]  Defendants' further claimed the VanNesses' North Carolina based online store for ALE YEAH mugs and t-shirts harmed Defendants, were likely to be confused with Defendants' beer stores, and diluted Defendants' rights in ALE YEAH!.  [*See generally* Ex. D.]

The dispute was eventually resolved when the VanNesses entered into a comprehensive license agreement for the "ALE YEAH!" mark with Defendants.  [Ex. E.]  The agreement gives Defendants the right to royalties, a right to supervise the VanNesses, a right to inspect and test all the VanNesses' goods offered under "ALE YEAH!," the right to enter the VanNesses' premises to inspect and test goods, and the right to demand samples of the goods.  [*Id*.]  The license agreement further instructs the VanNesses on how to present the "ALE YEAH!" mark on merchandise.  [*Id*.]

Defendants licensed the VanNesses after LMR accused Defendants of infringing LMR's rights in September 2013.  [D.1-2; Ex. E.]  Thereafter, Defendants rejected LMR's requests that Defendants not expand use of the ALE YEAH! mark.  Instead, Defendants opened an additional ALE YEAH! store and launched an online ALE YEAH! store featuring ALE YEAH! branded merchandise.  This litigation followed.

The VanNesses, licensees of Defendants, used the Asserted Mark in this judicial district. In particular, the VanNesses operated a website at www.aleyeahtees.com where they offered merchandise under the ALE YEAH mark.  Each and every product shown in the store is branded

---

[3] Government records showing the VanNesses reside in Mooresville, NC are attached hereto at Ex. C.

ALE YEAH.  A copy of the VanNesses' website is attached hereto at Exhibit F.

Defendants also maintain an interactive website through which sales can be made to residents of this district.  Every product available for sale through Defendants' website, www.aleyeahbeer.com/shop, is branded with their infringing ALE YEAH! mark.  A copy of Defendants' website is attached hereto at Exhibit G.

Surprisingly, Defendants now argue that they have no connection to North Carolina. [D.18, p.13; D.19, ¶28; D.20, ¶28.]  They claim there is no license agreement with the VanNesses.  [*Id.*; *but see* Ex. E (license agreement).]  Although they emphasized their nationwide advertising and solicitation of goods through the Internet to the USPTO, they now claim that this use is minimal and only applicable to Georgia.  Defendants claim it would be unfair to subject them to jurisdiction in a state and district where they intentionally and knowingly infringed LMR's rights.  Defendants' motion should be denied.

## Argument

### I. This Court has personal jurisdiction over Defendants.

"A court's exercise [of personal jurisdiction] over a nonresident defendant comports with due process if the defendant has 'minimum contacts' with the forum, such that to require the defendant to defend its interests in that state 'does not offend traditional notions of fair play and substantial justice.'"  *Carefirst of Md, Inc. v. Carefirst Pregnancy Ctrs., Inc.,* 334 F.3d 390, 397 (4th Cir. 2003) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154 (1945)). Jurisdiction is proper when "a nonresident … 'purposefully directs' his activities toward forum residents" as "[a] State generally has 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out of state actors."  *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 473, 105 S. Ct. 2174, 2182 (1985).

Defendants purposefully directed their activities towards LMR, a forum resident. Defendants entered into a licensing agreement to license ALE YEAH! in this judicial district. Defendants' licensee then offered goods branded ALE YEAH! in this judicial district. Defendants also offer infringing goods through their interactive website.

Defendants try to ignore their licensing activity. Mr. Holley and Mr. Vila testified under oath that "Ale Yeah!, Inc. did not sign a formal agreement [with the VanNesses] and no money exchanged hands." [D.19, ¶28; D.20, ¶28.] Defendants rely upon these statements to claim that "Defendants did not engage in *any* licensing activity." [D.18, p.12 (emphasis added).] They assert that, instead, they had "a conversation with the VanNe[s]ses." [D.18, p.13.] Defendants have not been candid with this Court.

Contrary to their sworn testimony, Messrs. Holley and Vila signed a formal agreement with the VanNesses. [Ex. E.] The agreement with the VanNesses is entitled "License Agreement." [Ex. E, p.1.] It claims that Messrs. Vila and Holley own the mark ALE YEAH! and are granting the VanNesses a license to use the ALE YEAH! mark. [*Id*.] There is no dispute the VanNesses are in North Carolina. According to government records, the VanNesses are based in Mooresville, North Carolina, which is in this district. [Ex. C.] Defendants were well aware they were licensing the Asserted Mark in this State. Messrs. Vila and Holley signed the license agreement. [*Id*. at p.4.]

The licensing agreement creates ongoing obligations for Defendants in this district. This further underscores Defendants' being subject to personal jurisdiction, as jurisdiction lies "where the defendant 'deliberately' … has created 'continuing obligations' between himself and residents of the forum." *Burger King,* 471 U.S. at 476, 105 S. Ct. at 2184 (internal citations omitted). Here, the agreement gives rise to a number of obligations. For example, Defendants

4

have the obligation to supervise, control, and test the Van Nesses' goods. [Ex. E, p.2 (Licensor has "the right to supervise the manufacture, processing, and packaging of the products sold by [the VanNesses] bearing the trademark, and to inspect and test all goods produced and offered for sale" under the ALE YEAH! mark "for the purpose of protecting and maintaining the standards of quality established by Licensor for goods sold under the mark.").] The VanNesses agreed that the Licensor and its authorized personnel may enter the VanNesses' premises to perform these inspections, and agreed to provide samples of the products upon written request from the Licensor. [*Id*.] The Licensor has the right to terminate the license agreement if the VanNesses' products fail to meet the Licensor's standards. [*Id*.] Defendants also took on an obligation to challenge unauthorized use of the mark, bring suits, and bring cancellation and opposition proceedings. [*Id*.] Defendants were rewarded for these obligations by receiving a right to royalties, a one-time licensing fee payment, and an acknowledgment of Defendants' senior rights[4] in the asserted mark. [*Id*. at p.1.]

Interactive websites that allow for purchases of infringing product may also subject a defendant to specific personal jurisdiction. *A.L. Enterprises, Inc. v. Sebron*, 2008 WL 4356958, *2 (D. Utah. 2008). *A.L. Enterprises* dealt with a defendant who used the plaintiff's trademark on the Internet to make sales with full knowledge of the plaintiff's rights. The Court found that the intentional trading on the plaintiff's rights, coupled with the interactive nature of the website, was sufficient to confer jurisdiction, despite no third party sales being made. *Id*. LMR alleged that in July 2015, Defendants opened an online store through which they sell merchandise branded ALE YEAH!. [D.1, ¶42.] Defendants admit to having an online store. [D.19, ¶18; D.20, ¶18.] Each and every product in Defendants' fairly expansive online store is offered under the mark and is an infringing product. [Ex. G.] There is no question Defendants knew about

---

[4] Defendants' rights are senior to the VanNesses. LMR's rights are senior to both.

5

LMR's rights, as the parties were engaged in a trademark opposition proceeding at the USPTO. Defendants' deliberate offering of an interactive website with an online store, while intentionally using LMR's mark, gives additional rise for personal jurisdiction.

Further, Defendants' licensees operated an interactive store offering merchandise under ALE YEAH in this judicial district. Defendants' licensees also branded every product on their online store ALE YEAH. Defendants and their licensees knew that this online store infringed LMR's rights at the time they entered into the license agreement. Nonetheless, they chose to infringe LMR's rights. Defendants cannot now assert that the VanNesses' activity has nothing to do with Defendants. *See, e.g., Christian Sci. Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan*, 259 F.3d 209 (4th Cir. 2003) (finding out of state defendant who collaborated with North Carolinian to post infringing material on North Carolinian's website was subject to personal jurisdiction in North Carolina).

Defendants assert that they are not subject to personal jurisdiction in North Carolina because they did not physically enter the state. That is not sufficient to defeat personal jurisdiction, as "[j]urisdiction…may not be avoided merely because the defendant did not *physically* enter the forum State." *Burger King*, 471 U.S. at 476, 105 S. Ct. at 2184 (emphasis in original). Here, as discussed above, Defendants purposefully availed themselves of the North Carolina forum. That is sufficient for jurisdiction.

Additionally, "a court may exercise personal jurisdiction over a non-resident defendant who acts intentionally to cause harm to a resident's legally protected interest, knowing that such conduct will cause harm at the victim's domicile to personal or property interests located there." *Musselwhite v. Internat'l Learning Works, Inc.,* 1997 WL 34588522, *3 (M.D.N.C. 1997) (denying motion to dismiss on jurisdiction for copyright and trademark claim). A defendant

whose "actions were committed with knowledge that harm would occur in [the] forum [at issue]" is subject to jurisdiction. *Id*.

Defendants knew LMR claimed rights in ALE YEAH!, took issue with Defendants' use of ALE YEAH!, and was located in North Carolina when Defendants licensed the Van Nesses to use the ALE YEAH! in this state. [D.1-2.] LMR wrote to Defendants, informing them of LMR's rights, several weeks before Defendants licensed the Van Nesses. [*Id*.] The Van Nesses similarly knew that LMR claimed rights in ALE YEAH!. [D.1-1.] These parties nonetheless arranged to infringe LMR's rights in North Carolina, the heart of LMR's business. [Ex. E.] Defendants cannot reasonably claim they never foresaw being hailed into court in North Carolina to answer for this scheme.

Defendants entered into a licensing agreement for ALE YEAH! with residents of this judicial district. Defendants were aware their licensees were using ALE YEAH! in this judicial district. Defendants' licensees are required to pay Defendants royalties from their sales – sales that occur in this judicial district, where the licensee is located. Defendants' interactive online store operating under ALE YEAH! is accessible in this State. It is unreasonable for Defendants to now claim they never purposefully availed themselves of the privilege of doing business in this state and this judicial district. Defendants' motion to dismiss for lack of personal jurisdiction should be denied.

## II. Venue is proper in this district.

"[U]nless the balancing of [the venue] factors weighs *strongly* in favor of the defendant, the plaintiff's choice of forum generally should not be disturbed." *Casana Furniture Co., LTD v. Coaster Co. of Am.*, 2009 WL 783399 (M.D.N.C. 2009) (emphasis in original) (internal quotations omitted). The exceptions to this rule allowing for less deference to the plaintiff's

7

choice of forum are when the forum chosen is foreign to the plaintiff *or* if the chosen forum is not related to the plaintiff's claims. *Id*. Those exceptions are not present here, as the forum chosen is a forum where LMR does business and one where infringement occurred. Thus, LMR's choice of forum is afforded great deference.

When determining questions regarding the transfer of venue, courts also consider factors such as the "relative ease of access to sources of proof," "the possibility of a view of the premises, if appropriate," "local interest in having localized controversies settled at home," and "other practical problems that make a trial easy, expeditious, and inexpensive." *Id.*[5] These factors all favor this district. LMR maintains premises that offer services under the ALE YEAH! mark in this district. Evidence and witnesses able to testify to the *Pizzeria Uno* factors for likelihood of confusion regarding the ALE YEAH! mark are here. For example, LMR personnel who can testify to the strength of LMR's ALE YEAH! mark reside in this judicial district. Advertisements showing how LMR markets under the ALE YEAH! mark are circulated in this district. LMR maintains at least two restaurants in this judicial district – in Charlotte and in Concord. [Ex. H; Ex. I.] Defendants' licensees – witnesses who can testify to use of the ALE YEAH! mark in this district – are located here. LMR is a North Carolina company and success story, and it is suffering harm in this local. North Carolina has an interest in resolving controversies occurring locally and harming its citizens. These factors all weigh in favor of this Court hearing this suit. Venue is proper in this judicial district.

### III. In the alternative, this Court should transfer this suit to the Northern District of Georgia.

If this Court finds that venue or personal jurisdiction is improper, LMR respectfully

---

[5] The other factors, such as the "availability of compulsory process for attendance of unwilling witnesses," "enforceability of a judgment," "relative advantage of a fair trial," "administrative difficulties of court congestion," and "avoidance of conflict of law" do not favor either party over the other.

moves this Court, pursuant to 28 U.S.C. §§ 1406(a) and 1631, to transfer this case to the Northern District of Georgia.  "Whenever a civil action is filed in a court…and that court finds that there is a want of jurisdiction, the court *shall*, if it is in the interest of justice, transfer such action…to any other such court in which the action…could have been brought at the time it was filed."  28 U.S.C. § 1631 (emphasis added).  Courts have also long permitted a case to be transferred to cure a lack of personal jurisdiction under transfer of venue statutes 28 U.S.C. §§ 1404(a) and 1406(a).  *See, e.g. Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 466, 82 S. Ct. 913, 916 (1962) (courts may transfer to cure want of jurisdiction or defect in venue "whether the court in which it was filed had personal jurisdiction over the defendants or not."); *In re Carefirst of Md, Inc.*, 305 F.3d 253, 256 (4th Cir. 2002); *and Kurtz v. Draur*, 434 F. Supp. 958 (E.D. Pa. 1977) (transferring case under 28 U.S.C. § 1404(a) to cure lack of personal jurisdiction).  Indeed, the United States Supreme Court made clear that transfer should be permitted to cure a lack of personal jurisdiction or defect in venue to "avoid[] the injustice which had often resulted to plaintiffs from dismissal of their actions merely because they had made an erroneous guess with regard to the existence of some elusive fact."  *Goldlawr*, 369 U.S. at 466, 82 S. Ct. at 915.

Venue and personal jurisdiction over the defendant are proper in the Northern District of Georgia, as Defendants admit to residing there.  [D.19, ¶¶ 1, 5, 7, 9; D.20, ¶¶1, 5, 7, 9.]  As such, if this Court finds jurisdiction or venue are improper in this district, this Court should transfer this case to the Northern District of Georgia.

## CONCLUSION

In light of the foregoing, this Court should deny Defendants' motion to dismiss.  In the alternative, this Court should transfer this case to the Northern District of Georgia.

Respectfully submitted, this the 9th day of October, 2015.

**Coats & Bennett, PLLC**
**Attorneys for**

By: */s/ Anthony J. Biller*
Anthony J. Biller
NC State Bar No. 24,117
Emily M. Haas
NC State Bar No. 39,716
1400 Crescent Green, Suite 300
Cary, North Carolina 27518
Telephone: (919) 854-1844
Facsimile: (919) 854-2084
Email: abiller@coatsandbennett.com
ehaas@coatsandbennett.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the 9th day of October, 2015 a copy of the foregoing **RESPONSE OPPOSING MOTION TO DISMISS** was filed with the Clerk of Court using the CM/ECF system which will send notification to opposing counsel at the following address:

> Derek Jason Allen
> Hayley R. Wells
> Ward and Smith, P.A.
> 82 Patton Avenue, Suite 300
> Asheville, NC 28801
> Email: dja@wardandsmith.com
> hrw@wardandsmith.com
>
> Robert S. Bexley
> Bexley Law Firm, LLC
> 4850 Sugarloaf Pkwy, Ste 209 #339
> Lawrenceville, GA 30044
> Email: robert@bexleylawfirm.com

> */s/ Anthony J. Biller*
> Anthony J. Biller
> NC State Bar No. 24,117
> 1400 Crescent Green, Suite 300
> Cary, North Carolina 27518
> Telephone: (919) 854-1844
> Facsimile: (919) 854-2084
> Email: abiller@coatsandbennett.com
>
> *Attorneys for Plaintiff*