UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:15-cv-00354-MOC-DSC

| | | |
|---|---|---|
| **LM RESTAURANTS, INC.,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| **ALE YEAH!, INC.** | ) | |
| **FRANCISCO VILA** | ) | |
| **ALE YEAH! ROSWELL, INC.** | ) | |
| **EDDIE HOLLEY** | ) | |
| **FILL 'ER UP, LLC,** | ) | |
| | ) | |
| Defendants. | ) | |

**THIS MATTER** is before the court on defendants' Motion to Dismiss or Transfer to the Northern District of Georgia, which has been fully briefed. A hearing was conducted on January 13, 2016, at which the parties presented oral arguments, defendants tendered relevant case law, and plaintiff submitted exhibits. For the reasons that follow, the court finds that defendants have minimum contacts with the State of North Carolina and will deny the Motion to Dismiss.

**FINDINGS AND CONCLUSIONS**

Plaintiff and defendants all claim the mark ALE YEAH! Plaintiff alleges that it has used the mark since 2007 in conjunction with promoting beer sales at its *Carolina Ale House* restaurants, which are located primarily in North Carolina, South Carolina, Florida, Georgia, Texas, and Tennessee. Defendants also lay claim to the mark and have used the mark in conjunction with their retail craft-brew stores in Georgia.

In the instant motion, defendants contend they should not be compelled to defend against plaintiff's claims of trademark infringement (among other claims) in North Carolina as they lack minimum contacts with the forum state sufficient to establish specific jurisdiction.

I.

For personal jurisdiction to be properly exercised by a court, a defendant must have sufficient "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Consulting Engineers Corp. v. Geometric Ltd., 561 F.3d 273, 277 (4th Cir. 2009) (quoting Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement, 326 U.S. 310, 316 (1945)) (internal quotation marks omitted). Rule 12(b)(2), Federal Rules of Civil Procedure, provides for dismissal where the court lacks personal jurisdiction over a particular defendant and Plaintiff has the burden of proving personal jurisdiction. Thomas v. Centennial Commc'ns Corp., 2006 WL 6151153, at *2 (W.D.N.C. Dec. 20, 2006). Plaintiff must show that the exercise of personal jurisdiction over the defendants complies with the forum state's long-arm statute and the constitutional requirements of due process. Grober v. Mako Products, Inc., 686 F.3d 1335, 1345 (Fed. Cir. 2012), reh'g denied (Sept. 14, 2012).

Since North Carolina's long-arm statute extends jurisdiction to the outer boundaries of due process, the jurisdiction analysis merges into a single due process inquiry. Thomas, 2006 WL 6151153, at *2. To be consistent with the limitations of due process, a defendant must have "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

Minimum contacts may be established by showing "general" or "specific" jurisdiction. Helicopteres Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 (1984). A court may exercise general jurisdiction over a non-resident defendant if the defendant has contacts with the state that are so "continuous and systematic" as to render them "essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011). In the absence of general jurisdiction, a court may exercise specific jurisdiction over the defendant in a cause of action that arises out of the defendant's activities in the forum state. In analyzing specific jurisdiction over a defendant, courts consider whether: "(1) the defendant purposefully directed its activities at residents of the forum state, (2) the claim arises out of or relates to the defendant's activities with the forum state, and (3) assertion of personal jurisdiction is reasonable and fair." Grober, 686 F.3d at 1346 (citation omitted).

Plaintiff has the burden of making a prima facie showing of specific jurisdiction by satisfying the first two elements. The burden then shifts to defendant to show that such assertion of personal jurisdiction is not reasonable and fair. Id.

II.

At issue here is whether either or both of two purported contacts with the forum state are sufficient to establish personal jurisdiction over these defendants. Both of these contacts concern two alleged residents of the Western District, Nicole and William VanNess. The first contact consists of statements made by defendants (through their counsel) before the TTAB in opposition to the VanNess's application for trademark protection for the mark ALE YEAH! The second purported contact again concerns the VanNesses, which appears to be a contract or license agreement allowing their use of the mark ALE YEAH! in online sales of merchandise.

Defendants contend that neither of these contacts can properly be considered and that even if they are, they do not provide sufficient minimum contacts to establish specific jurisdiction. Each contact will be discussed *seriatim*.

A.

The court has first considered whether the representations made in the Notice of Opposition filed in response to the VanNess's application before the TTAB, hereinafter the "'231 Application," is a sufficient contact. In their Notice of Opposition, defendants stated as follows:

> 3. Opposers have been using the mark ALE YEAH! (and design) in connection with retail store services featuring beer, growlers (a type of beer container glassware bottle), glassware, clothing and other beer-related merchandise since at least August 1, 2012. <u>Such uses include advertisements and articles in nationally distributed trade magazines</u>, building signs, showcasing their retail store services at trade shows within the U.S. and advertising their retail services online, and soliciting orders thereby, all using the ALE YEAH! (and design) mark, plus the mark ALE YEAH! as a standard character mark.

"Notice of Opposition," Plaintiff's Ex. D ¶3 (#21-4)(emphasis added). At the hearing, defendants argued that they were not judicially estopped from arguing a position here that may appear contrary to a position their counsel took before the TTAB, that such statement was a statement of their counsel, and that it does not amount to a sufficient contact in any event. Plaintiff argued that it was not relying on the statement to support its showing of minimum contacts.

For judicial estoppel to apply, "the party sought to be estopped must be seeking to adopt a position that is inconsistent with a stance taken in prior litigation. And the position sought to be estopped must be one of fact rather than law or legal theory." Lowery v. Stovall, 92 F.3d 219, 224 (4th Cir.1996) (citation omitted). As a starting point, the Supreme Court provides three factors to determine when judicial estoppel should apply: (1) the party's later position must be clearly

inconsistent with the earlier position; (2) the party must have succeeded in persuading a court to adopt the earlier position in the earlier proceeding; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. New Hampshire v. Maine, 532 U.S. 742, 749 (2001) (finding that if a litigant "assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position"). "Additional considerations may inform the doctrine's application in specific factual contexts." Id. at 751. The Court of Appeals for the Fourth Circuit has also interpreted judicial estoppel to prevent a party from taking a position in a judicial proceeding that is inconsistent with a stance previously taken in court. Zinkand v. Brown, 478 F.3d 634, 638 (4th Cir.2007). Instead of factors, the Fourth Circuit has a three-part test which must be satisfied before applying judicial estoppel: (1) defendant must seek to adopt a position that is inconsistent with a stance taken in prior litigation; (2) the prior inconsistent position must have been accepted by the court; and (3) defendant must have "intentionally misled the court to gain unfair advantage." Id. The bad faith requirement is the "determinative factor." Id. (internal citation omitted). The court agrees with defendants that judicial estoppel is inapplicable as the TTAB is not a court, but an "administrative tribunal of the USPTO, housed within the executive branch of the federal government." Buck's, Inc. v. Buc-ee's, Ltd., 2009 WL 1839007, at *8 (D. Neb. June 25, 2009) (citing 15 U.S.C. § 1067(a)).

What the court gleans from such statement is simply the fact that defendants have advertised their goods and services in nationally distributed trade publication. Even if the court could consider such representation made before the TTAB as some evidence that defendants had

promoted their wares in national trade journals, and assuming that such journals were distributed in the State of North Carolina, the court finds that advertising in national trade magazines is not a sufficient contact to satisfy the requirements of due process. Jet-Pro Co. v. Sweet Mfg. Co., 1993 WL 463512, at *6 (D.Kan.1993) (stating that "the mere fact that a defendant advertises in a national trade journal or magazine that is circulated in Kansas, does not, in and of itself, establish minimum contacts"). Thus, judicial estoppel is a non-starter as the underlying activity is insufficient to form a minimum contact with the forum state.

B.

Next, the court has considered defendants' post-TTAB business relationship with the VanNesses in Mooresville, North Carolina. Plaintiff contends that defendants have purposefully directed activities in the forum state that run headlong into plaintiff's operation of their *Carolina Ale Houses* in that defendants have licensed the VanNesses to sell good bearing the allegedly infringing mark in this district.

Defendants first contend that the agreement with the VanNess's is not a valid agreement. The court has considered the License Agreement and determined that it is writing signed by the VanNesses and the individual defendants herein and that it contains an exchange of promises. See "License Agreement," Exhibit E (#24-5). Indeed, the document indicates that the Licensee resides in North Carolina. Id. at ¶ XIV. Apparently, defendants argument that such license agreement is invalid is based on the licensee never delivering to them the $1 called for in paragraph 2 of the agreement.

The court does not agree with defendants that the license agreement is void for want of consideration. It is well established that an essential element of a valid and enforceable contract

is consideration. Lewis v. Lester, ___ N.C.App. ___, 760 S.E.2d 91, 92–93 (2014). "A mere promise, without more, lacks of consideration and is unenforceable." Stonestreet v. S. Oil Co., 226 N.C. 261, 263 (1946). Some benefit or advantage to the promisee or loss or detriment to the promisor must be present to constitute consideration. Matter of Owen, 62 N.C.App. 506, 509 (1983). "[T]here is consideration if the promisee, in return for the promise, does anything legal which he is not bound to do, or refrains from doing anything which he has a right to do, whether there is any actual loss or detriment to him or actual benefit to the promisor or not." Penley v. Penley, 314 N.C. 1, 14 (1985). Put another way, it is this exchange of promises or the "mutuality of promises" that satisfies the requirement of consideration. Rabun County Bank v. Highlands Land Holding Group, LLC, 2014 WL 1047409 (N.C.App. March 18, 2014). The very face of the license agreement clearly shows, among a host of promisee, that licensor conveyed the right to use what it contended was its valuable trademark and licensee agreed to pay royalties. Whether the licensee ever conveyed the $1 is without consequence inasmuch as consideration is found in the license through the exchange of promises.

Having determined that defendants have in fact contracted with residents of the forum, the next question is whether that agreement in any manner relates to the subject matter of this litigation, which is the alleged infringement of disputed mark. Review of the license agreement reveals that it concerns the subject matter of this litigation, in that it allows residents of this district by way of license to do precisely what plaintiff contends defendant cannot do directly, which is to sell goods bearing the mark ALE YEAH! While defendants' counsel at the hearing stated that, to date, defendants have been paid no royalties by the VanNesses, the question under prevailing law is whether there is any "actual benefit to the promisor, " Penley, supra, the

question is whether "the defendant 'deliberately' … created 'continuing obligations' between himself and residents of the forum." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985) (internal citations omitted). Clearly, the licensing of the VanNesses to sell products bearing allegedly infringing marks clearly relates to the subject matter of this litigation.

The question now becomes whether that contact is substantial enough to confer specific jurisdiction. As discussed above, a court may exercise specific jurisdiction over the defendant in a cause of action that arises out of the defendant's activities in the forum state. In analyzing specific jurisdiction here, the court has considered whether: (1) the defendants purposefully directed their activities at residents of the forum state, and the answer is yes; (2) the claim arises out of or relates to the defendant's activities with the forum state, and the answer is yes, and (3) whether assertion of personal jurisdiction is reasonable and fair, and the answer is again yes. Plaintiff has alleged and shown through exhibits that defendants, at the time they granted the license, well knew that its claim to ownership of the mark was in dispute; that plaintiff was domiciled in North Carolina; and that plaintiff had written to defendants several weeks before the license issued informing them of those purported rights. By permitting by license business activities in the forum state, which if done by defendants directly would have certainly been substantial acts, informs the court that such licensing is in itself a substantial act, one that would inform a prudent business person that they are likely to be hailed into a lawsuit in this state. Courts simply cannot lessen the consequences of doing "indirectly that which they cannot do directly." Packard v. Provident National Bank, 994 F.2d 1039, 1050 (3d Cir.1993). While the license agreement is clearly subject to enforcement under Georgia law, the court has little doubt but that defendants would turn to the protections afforded under North Carolina law to enforce a

breach of the entry provision by domestication of any Georgia writ of entry and by seeking assistance from law enforcement to gain entry or seize unlawful goods. Indeed, this court could foresee defendants themselves coming into this court to enforce the license agreement. Defendants have not shown that the exercise of personal jurisdiction in this forum would be unreasonable or unfair.

Clearly, all three factors weigh in favor of the exercise of jurisdiction in this district. The court finds that it does have specific jurisdiction over defendants.

## III.

Finally, the court has considered the alternative motion to transfer this matter to the Northern District of Georgia. In the Fourth Circuit, the following factors are considered when determining whether a discretionary transfer of venue is appropriate: the plaintiff's initial choice of forum; the residence of the parties; the relative ease of access of proof; the availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses; the possibility of a view; the enforceability of a judgment, if obtained; the relative advantages and obstacles to a fair trial; other practical problems that make a trial easy, expeditious, and inexpensive; the administrative difficulties of court congestion; the interest in having localized controversies settled at home and the appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the action; and the avoidance of unnecessary problems with conflict of laws. Jim Crockett Promotions, Inc. v. Action Media Grp., Inc., 751 F. Supp. 93, 96 (W.D.N.C. 1990). The "relative ease of access to sources of proof," "the possibility of a view of the premises, if appropriate," "local interest in having localized controversies settled at home," and "other practical problems that make a trial

easy, expeditious, and inexpensive," all favor retention. While the Northern District of Georgia would certainly be more convenient to defendants, such convenience is offset by inconvenience to plaintiff. Finally, this court determines that court congestion plays no role in such determine as a prompt resolution can be had in either district. The court will deny the alternative Motion to Transfer and retain this matter on the court's docket.

***

Finally, the court appreciates the fine manner in which all counsel briefed and argued this case. If the parties were to agree, the court would consider an intra-district transfer (with retention by the undersigned) to this court's Asheville Division, which is closer to defendants' home and is where defendants' counsel practices.

**ORDER**

**IT IS, THEREFORE, ORDERED** that defendants' Motion to Dismiss or Transfer to the Northern District of Georgia (#17) is **DENIED**.

Signed: February 1, 2016

Max O. Cogburn Jr
United States District Judge